UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARIE CAMPBELL, ALFREDO RODRIGUEZ,
RICHARD LARREATEGUI, RAUL DEJESUS, and
RAKESH KARKI, on behalf of themselves and all
others similarly situated,

                                 Plaintiffs,

        v.

 CITY OF NEW YORK,

                               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

Index No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs MARIE CAMPBELL ("Plaintiff Campbell"), ALFREDO RODRIGUEZ ("Plaintiff Rodriguez"), RICHARD LARREATEGUI ("Plaintiff Larreategui"), RAUL DEJESUS ("Plaintiff Dejesus"), and RAKESH KARKI ("Plaintiff Karki") (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys MEHRI & SKALET PLLC and VALLI KANE & VAGNINI LLP, bring this action for damages and other legal and equitable relief against Defendant CITY OF NEW YORK ("Defendant") for violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq*., and any other causes of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1.       This is a putative collective action brought by Plaintiffs challenging acts committed by Defendant against Plaintiffs and those similarly situated, which violate federal wage and hour laws.

2.       Defendant does not properly compensate Plaintiffs and other campus peace officers, campus public safety sergeants, campus security assistants, and security specialists who have been employed at City University of New York ("CUNY") community colleges ("Community Colleges") (these employees collectively referred to as "CUNY Officers").

3.     First, Defendant does not include three types of pay differentials – shift differentials, fire safety differentials, and "arms" differentials – in its calculation of employees' regular rate of pay.  The regular rate of pay is used in the calculation of Plaintiffs' overtime pay rates. The FLSA requires Defendant to multiply CUNY Officers' regular rate of pay by 1.5 to calculate their overtime pay rates. By omitting these differentials from CUNY Officers' regular pay rate, Defendant underpays their overtime.

4.     Second, Defendant does not compensate campus public safety sergeants and corporals (peace officer level II) employed at Community Colleges ("CUNY Shift Supervisors") for off-the clock work that it expects and knows that they do before and after their shifts (referred to as "tours"). The amount of pre- and post-tour off the clock work performed per tour ranges from approximately 15 minutes to 1.5 hours. This off-the-clock work should be treated as compensable work time under the FLSA and count towards the total hours worked in a pay period.

5.     Third, Defendant does not pay CUNY Shift Supervisors for work performed during their uncompensated meal breaks. Frequently, CUNY Shift Supervisors' meal breaks are interrupted by work demands. The meal periods for those CUNY Shift Supervisors who are interrupted by work should be treated as compensable work time under the FLSA and count towards the total hours worked in a pay period.

6.     Thus, Plaintiffs Karki, Dejesus, and Campbell bring this action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and a collective of persons who are/were employed by Defendant at Community Colleges as CUNY non-supervisory peace officers, security specialists, and security assistants (the "Non-Supervisory Collective") during the past three years through the final date of the disposition of this action for whom Defendant did not include one or more types of differentials in calculating their overtime pay when they worked in excess of 40 hours in a workweek. They are entitled to recover: (i) unpaid overtime wages; (ii) liquidated damages; (iii)

2

attorneys' fees and costs; and (iv) such other and further relief as this Court finds necessary and proper.

7.      Plaintiffs Campbell, Rodriguez, and Larreategui bring this action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and a collective of persons who are/were employed by Defendant at Community Colleges as CUNY Shift Supervisors (the "Supervisory Collective") from 3 years before the filing of this complaint through the final date of the disposition of this action for whom Defendant did not (a) include one or more types of differentials in calculating their overtime pay and (b) count off-the-clock pre- and post-shift and meal time work when they worked in excess of 40 hours in a workweek. They are entitled to recover: (i) unpaid overtime wages; (ii) liquidated damages; (iii) attorneys' fees and costs; and (iv) such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

8.       This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)-(2) because Defendant resides in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

10.      Defendant is a municipality incorporated under the laws of the State of New York.

11.      Plaintiff Campbell is an "employee" of Defendant under the meaning of the FLSA. Plaintiff Campbell has been a CUNY sergeant since August 2021. From February 2019 until August 2021, she was a CUNY peace officer. At all times, she has worked at Queensborough Community College. She resides in Queens, NY.

3

12.     Plaintiff Rodriguez is an "employee" of Defendant under the meaning of the FLSA. Plaintiff Rodriguez has been a CUNY sergeant since 2014. Since 2018, he has worked at Hostos Community College.  He resides in the Bronx, NY.

13.     Plaintiff Larreategui is an "employee" of Defendant under the meaning of the FLSA. Plaintiff Larreategui has been a CUNY sergeant at LaGuardia Community College since 2010. He resides in Queens, NY.

14.     Plaintiff Dejesus is an "employee" of Defendant under the meaning of the FLSA. Plaintiff Dejesus has been a CUNY peace officer at Hostos Community College since around 2009. He resides in the Bronx, NY.

15.     Plaintiff Karki is an "employee" of Defendant under the meaning of the FLSA. Plaintiff Karki has been a CUNY peace officer at the Borough of Manhattan Community College since November 15, 2019.  He resides in Nassau County, NY.

## STATEMENT OF FACTS

### I.    Facts Relating To All CUNY Officers

16.     CUNY has approximately 25 campuses in the City of New York. Of those, 7 are Community Colleges. The CUNY Department of Public Safety is responsible for maintaining the safety and security of all people and property of CUNY.

17.     Peace officers, sergeants, security specialists, and security assistants work at all 25 campuses. Those employees who work on non-Community College campuses are employees of the State of New York. In contrast, CUNY Officers who work at Community Colleges are employees of Defendant.

18.     Defendant pays the salaries and overtime of CUNY Officers.

19.     CUNY Officers receive employee benefits through plans funded at least in part by Defendant.

20.     Upon information and belief at the time of the filing of this complaint, the CUNY Department of Public Safety consists of about 1,000 employees, including about 12 specialists, 46 sergeants, 115 peace officers, 8 security officers of unspecified titles, and 103 full-time security assistants at the Community Colleges – about 284 current potential collective action members. There are more than 284 potential collective action members when former CUNY Officers are included. Over these potential collective action members are several layers of management, including Campus Directors and Campus Assistant Directors.

21.     CUNY Officers are responsible for detecting and preventing crime at Community Colleges and for enforcing laws, rules, and regulations for the protection of people and property and the maintenance of peace, order, and security. They are tasked with developing and maintaining positive relationships with students, faculty, and staff. Typical activities include responding to alarms, calls for service, and medical emergencies, ensuring access, crowd, and traffic control, performing parking services, and participating in crime prevention and community relations. CUNY Officers conduct patrols on foot, bike, and car. And they have additional duties such as dispatching, report writing, and fire safety.

22.     Defendant pays some CUNY Officers biweekly differentials in addition to their ordinary pay. The most common of these differentials reflects work on evening and night shifts, but Defendant also pays differentials to reflect the extra duties of serving as a fire safety officer or wearing a gun while performing their duties.

23.     Defendant pays CUNY Officers a 10% shift differential for all scheduled hours worked between 6:00 PM and 8:00 AM, with more than one hour of work between 6:00 PM and 8:00 AM (hereafter, the "Night Shift" differential).

24. The FLSA requires employers to include shift differentials in their calculations of each employee's regular rate of pay and, when a non-exempt employee works overtime, to compensate that employee at a minimum of 1.5 times the employee's regular rate of pay.

25. Defendant does not include shift differentials when calculating CUNY Officers' regular rate of pay.

26. As a result, Defendant underpays those CUNY Officers who receive a shift differential and work overtime.

27. CUNY Officers who are fire safety officers also receive a pay differential (hereafter the "Fire Safety" differential). But Defendant does not include fire safety differentials when calculating CUNY Officers' regular rate of pay.

28. The FLSA requires employers to include differentials reflecting extra responsibilities in their calculations of employees' regular rate of pay and, when an employee works overtime, to compensate that employee at a minimum of 1.5 times the employee's regular rate of pay.

29. As a result, Defendant underpays overtime those CUNY Officers who receive fire safety differentials and work overtime.

30. CUNY Officers who wear guns when performing their duties receive a differential (hereafter the "Arms" differential).

31. Defendant does not include the Arms differentials when calculating CUNY Officers' regular rate of pay.

32. As a result, Defendant underpays overtime to CUNY Officers who receive the Arms differential and work overtime.

33. The FLSA statutory, regulatory, and caselaw clearly establish, including in cases brought against Defendant, that an employer must include differentials such as shift, fire safety,

6

and arms differentials in calculating employees' regular rate of pay and hence employees' overtime pay.

34.     Defendant does not have a good faith or reasonable basis to believe that not including differentials in employees' regular rate of pay complies with the FLSA.

35.     Defendant either intentionally violates the FLSA or recklessly violates the FLSA by not including shift, fire safety, and arms differentials in CUNY Officers' regular rate of pay.

## II.    **Facts Relating To CUNY Sergeants**

36.     CUNY sergeants and corporals are the supervisors for their tours at their assigned college. As Shift Supervisors, they frequently perform duties specified in CUNY's "Position Description" for CUNY Sergeants, amended in December 2020, prior to the start of their tours. https://www.cuny.edu/wp-content/uploads/sites/4/media-assets/Personnl-Order-2020-03-Security-Titles-compressed.pdf. Indeed, the only time that some of these specified supervisory duties can be performed, and the best time for the performance of another duty, is before a tour begins (collectively the "Pre-Tour Supervisor Duties").

37.     The first and third "General Work Tasks" listed in the CUNY "Position Description" for CUNY Sergeants are:

Handle day-to-day personnel scheduling, ensure adequate tour coverage, and conduct roll call for a specified Public Safety tour;

…

Provide guidance to subordinates in responding to emergencies.

Another "General Work Task" is to "[c]onduct inventory and inspections of Public Safety equipment to ensure that there is sufficient equipment in working order to perform security and other Public Safety functions."

38.     "Handl[ing] day-to-day personnel scheduling" and "ensur[ing] adequate tour coverage" requires CUNY Shift Supervisors to perform work prior to their tours. Before a tour, a CUNY Shift Supervisor must review emails, text messages, and phone messages to determine whether any CUNY Officers have "called out" or otherwise will not be present during part or all the tour. If so, the CUNY Shift Supervisor, again prior to the tour, must contact subordinate officers to try to identify volunteers to fill the posts or, if necessary, must "mandate" that one or more officers – often officers who are just completing a tour – fill the otherwise vacant posts.

39.     CUNY Shift Supervisors also must prepare before their tour begins to "conduct roll call" immediately after their tour begins for all the campus peace officers and security assistants assigned to that tour. To prepare to conduct roll call, CUNY Shift Supervisors must review all relevant written memoranda, emails, and other documents and find out what has happened in the prior tour. One of those documents may be a written recap of the outgoing tour that CUNY Shift Supervisors are required to prepare, as discussed below. If an incoming CUNY Shift Supervisor does not have access to a written recap, that sergeant must speak with the outgoing Shift Supervisor before the tour begins.

40.     As part of the duty to "ensure that there is sufficient equipment in working order to perform security and other Public Safety functions," many CUNY Shift Supervisors are required to check radios before issuing them at roll call to CUNY Officers and/or contract security personnel on the tour. This checking of the radios must be done before the CUNY Shift Supervisor's tour begins.

41.     Finally, many CUNY Shift Supervisors find the best time to "[p]rovide guidance to subordinates in responding to emergencies" is before a tour begins. If a CUNY Shift Supervisor believes that a CUNY Officer has not responded optimally to an emergency or other event in a prior tour, the sergeant may and frequently does talk with the officer before the tour begins.

8

42.    CUNY Shift Supervisors also must perform two types of duties before they leave the campus that, depending on circumstances, are performed during the tour or after the tour ends ("Post-Tour Supervisor Duties").

43.    As part of CUNY Shift Supervisors' duty to "[c]learly relay important and pertinent information to management and officers, in a timely manner," https://www.cuny.edu/wp-content/uploads/sites/4/media-assets/Personnl-Order-2020-03-Security-Titles-compressed.pdf, CUNY Shift Supervisors must prepare and submit a written summary of the events that occurred during their tour. Some CUNY Shift Supervisors generally are unable to work on the summaries until after their tour ends. Even if their workload provides time to work on the summary during the tour, they may need to finish the summary after the tour ends if significant events occur toward the end of the tour.

44.    CUNY Shift Supervisors must prepare incident reports concerning any incidents in which they are personally involved during their tours and must, as the position description specifies, "[r]eview Incident Reports and other Public Safety reports prepared by subordinates." Frequently, CUNY Shift Supervisors are unable to review subordinates' Incident Reports until after their tours end.

45.    CUNY Shift Supervisors' managers, who often were CUNY Shift Supervisors earlier in their careers, are aware that CUNY Shift Supervisors perform substantial off-the-clock work on duties prescribed by Defendant before their tours begin or after they end.

46.    Even if supervisors did not know that some CUNY Shift Supervisors were performing their prescribed duties before or after their shifts, the managers could have known of the Shift Supervisors' pre- and post-tour work by exercising reasonable diligence.

47.    Defendant does not pay CUNY Shift Supervisors for time spent performing pre- and post-tour work.

48.     CUNY Shift Supervisors have a 30-minute meal break during their tour. Defendant does not compensate CUNY Shift Supervisors for this meal break.

49.     Even though meal breaks are unpaid, CUNY Shift Supervisors often must attend to work tasks during the meal. For instance, if an incident arises that requires the attention of a CUNY Shift Supervisor, the officer must leave their meal break and attend to the incident. Defendant requires and expects CUNY Shift Supervisors to do so.

50.     Defendant does not pay CUNY Shift Supervisors for any time they spend working during a meal break.

51.     The FLSA statutory, regulatory, and caselaw clearly establish, including in cases brought against Defendant, that an employer must pay at overtime rates for any work in excess of 40 hours in a workweek that a non-exempt employee is directed or allowed to work, even if it is off-the-clock work.

52.     Defendant does not have a good faith or reasonable basis to believe that not paying CUNY Shift Supervisors for their time spent working pre/post tour and/or during meal breaks complies with the FLSA.

53.     Defendant either intentionally violates the FLSA or recklessly violates the FLSA by not compensating for off-the-clock pre-tour, post-tour, and meal time work performed by CUNY Shift Supervisors.

### III.    Facts Relevant to Individual Plaintiffs

#### A.    Plaintiff Campbell

54.     Plaintiff Campbell has been a CUNY Officer since February 2019. From February 2019 until August 2021, she was a CUNY Peace Officer at Queensborough Community College ("Queensborough"). She has been a CUNY Sergeant at Queensborough since August 2021.

Queensborough is one of CUNY's Community Colleges. Thus, Plaintiff Campbell has at all times during her employment been an employee of Defendant, as defined by the FLSA.

55.    Plaintiff Campbell's wage statements are processed through "NYC EStubs" and reflect deductions from the NYC Employees' Retirement System and the City Employees Union.

56.    Plaintiff Campbell is scheduled to work at least 40 hours per week, not including time spent working during unpaid meal breaks, and pre- and post-tour work.

57.    She works the 3:30 PM to 12:00 AM tour.

58.    As a CUNY Sergeant, Plaintiff Campbell performs various tasks before her tour begins. For instance, before Plaintiff Campbell can conduct roll call, which occurs at the start of a tour, she must first review briefing, consult with her supervisors about whether anything needs to be added, and see if there are any attendance call-outs. She also performs pre-tour tasks like checking equipment such as radios. This pre-tour work typically takes about 20 to 25 minutes. Defendant does not pay Plaintiff Campbell for this pre-tour work.

59.    As a CUNY Sergeant, Plaintiff Campbell also performs various post-tour tasks, such as submitting a tour report. She often cannot draft the entire report during her tour because she is busy responding to incidents and otherwise performing her other job duties. So, she often must complete her tour report after the tour ends, which can take up to 1.5 hours to complete. She performs post-tour work approximately once or twice per week. Defendant does not pay Plaintiff Campbell for this post-tour work.

60.    Plaintiff Campbell is regularly required to attend to work matters during her unpaid lunch breaks. She estimates that approximately 60% of her unpaid lunch breaks are interrupted by work. Defendant does not pay Plaintiff Campbell for her time spent working during lunch breaks.

61.    Upon information and belief, Plaintiff Campbell's supervisors were once CUNY Peace Officers and CUNY Sergeants. Thus, these supervisors are aware that Plaintiff Campbell,

like other CUNY Shift Supervisors, is not paid for time spent working during meal breaks and working pre- and post- tour.

62.    For example, on November 9, 2023, Defendant paid Plaintiff Campbell for the pay period of October 22, 2023, through November 4, 2023. The wage statement from this two-week pay period reflects 80 hours of work. Plaintiff Campbell spent approximately 2 to 3 hours (or more) each week performing pre- and post- tour work, and would on occasion be required to work during meal breaks. Defendant did not pay Plaintiff Campbell for these additional hours during this pay period and other pay periods. Accordingly, Defendant did not pay Plaintiff Campbell the overtime premium of 1.5 times her hourly rate for all her hours worked in excess of 40 per workweek.

63.    Additionally, Plaintiff Campbell's November 9, 2023 wage statement lists her straight time wages for 80 hours of work as $2,292.56, for an average hourly rate of $28.66 per hour. Defendant also paid her for 13 hours of overtime at an approximate rate of $43.06 per hour. The wage statement reflects a Night Shift differential of $2.87 per hour. Plaintiff Campbell's Night Shift differential should have been included in her "regular rate of pay" when calculating her proper overtime rate. That is, her regular rate of pay for this pay period should have been $31.53 per hour (straight time rate of $28.66 plus the hourly Night Shift differential of $2.87). Thus, Defendant should have paid Plaintiff Campbell an overtime rate of $47.30 per hour, which reflects 1.5 times $31.53. Defendant shorted her $4.24 per hour for each hour for which it paid her overtime and $47.30 per hour for each off-the-clock work hour. Defendant's failure to properly pay Plaintiff Campbell's overtime violates the FLSA.

**B.    Plaintiff Rodriguez**

64.    Plaintiff Rodriguez has been a CUNY Officer since 1997. In 2014, he was promoted to CUNY Sergeant. He has worked at Hostos Community College ("Hostos") since 2018. Hostos

is one of CUNY's Community Colleges. Thus, Plaintiff Rodriguez has at all times during his employment been an employee of Defendant, as defined by the FLSA.

65.    Plaintiff Rodriguez's wage statements are processed through "NYC EStubs" and reflect deductions from the NYC Employees' Retirement System and the City Employees Union.

66.     Plaintiff Rodriguez is scheduled to work at least 40 hours per week, not including pre- and post- tour work.

67.    Plaintiff Rodriguez carries a firearm as part of his job responsibilities. He receives the Arms pay differential.

68.    As a CUNY Sergeant, Plaintiff Rodriguez performs various tasks before his tour begins. For instance, before Plaintiff Rodriguez can conduct roll call, which occurs at the start of a tour, he must first check emails and review briefing and checking equipment such as radios. This pre-tour work typically takes about 20 to 25 minutes.

69.    As a CUNY Sergeant, Plaintiff Rodriguez also performs various post-tour tasks, such as drafting and emailing tour reports to his supervisors. Plaintiff Rodriguez typically cannot draft his reports during the tour because he is busy responding to incidents and otherwise performing his other job duties. So, he must often complete his report after the tour ends. This typically takes him about 30 to 45 minutes.

70.    Upon information and belief, Plaintiff Rodriguez's supervisors were once CUNY Peace Officers and CUNY Sergeants. Thus, these supervisors are aware that Plaintiff Rodriguez, like other CUNY Sergeants, is not paid for time spent working pre- and post- tour.

71.    For example, on October 27, 2023, Defendant paid Plaintiff Rodriguez for the pay period of October 8, 2023 through October 21, 2023. The wage statement from this two-week pay period reflects 80 hours of work. Plaintiff Rodriguez spent approximately 4 hours or more each week performing pre- and post- tour work. Defendant did not pay Plaintiff Rodriguez for these

additional hours during this pay period and other pay periods. Accordingly, Defendant did not pay Plaintiff Rodriguez the overtime premium of 1.5 times his hourly rate for all his hours worked in excess of 40 per workweek.

72.    Additionally, Plaintiff Rodriguez's October 27, 2023 wage statement lists his straight time wages for 80 hours of work as $2,292.56, for an approximate hourly rate of $28.66 per hour. Defendant also paid him for 16 hours of overtime at an approximate rate of $43.06 per hour. The wage statement lists an Arms differential of $71.26. Plaintiff Rodriguez's Arms differential should have been included in his "regular rate of pay" when calculating his proper overtime rate. That is, his regular rate of pay for this pay period should have been $29.55 (reflecting $71.26 Arms differential, plus $2,292.56 in straight time pay, divided by 80 hours of work). Thus, Defendant should have paid Plaintiff Rodriguez an overtime rate of $44.33 per hour, which reflects 1.5 times $29.55. Defendant shorted him $1.27 per hour for each hour for which it paid him overtime and $44.33 per hour for each off-the-clock work hour. Defendant's failure to properly pay Plaintiff Rodriguez's overtime violates the FLSA.

### C.    Plaintiff Larreategui

73.    Plaintiff Larreategui has been a CUNY Officer at LaGuardia Community College ("LaGuardia") since 1994. He was promoted to CUNY Sergeant in 2010. LaGuardia is one of CUNY's Community Colleges. Thus, Plaintiff Larreategui has at all times during his employment been an employee of Defendant, as defined by the FLSA.

74.    Plaintiff Larreategui's wage statements are processed through "NYC EStubs" and reflect deductions from the NYC Employees' Retirement System and the City Employees Union.

75.    Plaintiff Larreategui is scheduled to work at least 40 hours per week. He works the 10:45 PM to 7:15 AM tour.

76.     Plaintiff Larreategui is certified as a Fire Safety Director. He receives a Fire Safety differential, which is reflected on his wage statements.

77.     On December 8, 2023, Defendant paid Plaintiff Larreategui for the pay period of November 19, 2023 through December 2, 2023. The wage statement for this two-week period lists his straight time wages for 80 hours of work. Plaintiff Larreategui spent approximately 1.25 hours or more each week performing pre-tour work. Defendant did not pay Plaintiff Larreategui for these additional hours during this pay period and other pay periods. Accordingly, Defendant did not pay Plaintiff Larreategui the overtime premium of 1.5 times his hourly rate for all his hours worked in excess of 40 per workweek.

78.     Additionally, Plaintiff Larreategui's December 8, 2023 wage statement lists his straight time wages for 80 hours of work as $2,315.43, for an approximate hourly rate of $28.94 per hour. Defendant also paid him for 7.5 hours of overtime at an approximate rate of $43.49 per hour. The wage statement also reflects a Night Shift differential of $2.90 per hour, and a Fire Safety differential of $159.20 (or $1.99 per hour). Plaintiff Larreategui's Night Shift and Fire Safety differentials should have been included in his "regular rate of pay" when calculating his proper overtime rate. That is, his regular rate of pay for this pay period should have been $33.83 per hour (straight time rate of $28.94 plus Night Shift and Fire Safety differentials of $2.90 and $1.99 per hour). Thus, Defendant should have paid Plaintiff Larreategui an overtime rate of $50.75 per hour, which reflects 1.5 times $33.83. Defendant shorted him $7.26 per hour for each hour for which it paid him overtime and $50.75 per hour for each off-the-clock work hour. Defendant's failure to properly pay Plaintiff Larreategui's overtime violates the FLSA.

**D.     Plaintiff Dejesus**

79.     Plaintiff Dejesus has been a CUNY Peace Officer at Hostos since 2009. Thus, he has at all times during his employment been an employee of Defendant, as defined by the FLSA.

80.    Plaintiff Dejesus' wage statements are processed through "NYC EStubs" and reflect deductions from the NYC Employees' Retirement System and the City Employees Union.

81.    Plaintiff Dejesus is scheduled to work at least 40 hours per week.

82.    Plaintiff Dejesus carries a firearm as part of his job responsibilities. He receives the Arms pay differential.

83.    On October 27, 2023, Defendant paid Plaintiff Dejesus for the pay period of October 8, 2023 through October 21, 2023. The wage statement for this two-week period lists his straight time wages for 80 hours of work as $1947.26, for an average hourly rate of $24.34 per hour. Defendant also paid him for 28 hours of overtime at an approximate overtime rate of $36.57 per hour. The wage statement lists an Arms differential of $71.26, for an approximate hourly rate of $0.89 per hour. Plaintiff Dejesus' Arms differential should have been included in his "regular rate of pay" when calculating his proper overtime rate. That is, his regular rate of pay should have been $25.23 per hour (straight time rate of $24.34 plus $0.89 Arms differential). Thus, Defendant should have paid Plaintiff Dejesus an overtime rate of $37.85 per hour, which reflects 1.5 times $24.34. Defendant shorted him $1.28 per hour for each hour for which it paid him overtime. Defendant's failure to properly pay Plaintiff Dejesus' overtime violates the FLSA.

**E.    _Plaintiff Karki_**

84.    Plaintiff Karki was a campus security assistant at Borough of Manhattan Community College ("BMCC") from 2012 until November 2019, when he became a CUNY Peace Officer. He continues to work at BMCC, which is one of CUNY's Community Colleges. Thus, Plaintiff Karki has at all times during his employment been an employee of Defendant, as defined by the FLSA.

85.     Plaintiff Karki is scheduled to work at least 40 hours per week. He works the 3:00 PM to 11:30 PM tour. He receives the Night Shift differential for part of his tour, which is reflected on his wage statements.

86.     On October 13, 2023, Defendant paid Plaintiff Karki for the pay period of September 24, 2023 through October 7, 2023. The wage statement for this two-week period lists his straight time wages for 80 hours of work as $1,572.59, for an approximate hourly rate of $19.66. Defendant also paid him for 28.25 hours of overtime at an approximate overtime rate of $29.54. The wage statement lists a Night Shift differential of approximately $1.97 per hour for 44 hours, an average of about $1.08 over 80 hours. Plaintiff Karki's Night Shift differential should have been included in his "regular rate of pay" when calculating his proper overtime rate. That is, his regular rate of pay should have been $20.74 (straight time rate of $19.66 plus $1.08 Night Shift differential). Thus, Defendant should have paid Plaintiff Karki an overtime rate of $31.11 per hour, which reflects 1.5 times $20.74. Defendant shorted him $1.57 per hour for each hour for which it paid him overtime. Defendant's failure to properly pay Plaintiff Karki's overtime violates the FLSA.

## FLSA COLLECTIVE ACTION ALLEGATIONS

### IV.    The Non-Supervisory Collective

87.     Plaintiffs Campbell, Dejesus, and Karki seek to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on their own behalves as well as those in the following Collective:

> All CUNY Peace Officers employed by Defendant during the past 3 years through the final date of disposition of this action, who worked in excess of 40 hours in any workweek and were not paid at the statutorily required rate of 1.5 times their regular rate for all hours worked in excess of 40 in those workweeks because Defendant omitted Night Shift, Arms, and/or Fire Safety differentials from their regular rate of pay.

Members of this Collective hereafter referred to as "Non-Supervisory Collective Plaintiffs."

88.     At all relevant times, Plaintiffs Dejesus and Karki and until August 2021 Plaintiff Campbell were similarly situated to all such individuals in the Collective because, while employed by Defendant, Plaintiffs Campbell, Karki, Dejesus and all Non-Supervisory Collective Plaintiffs: were subject to the same laws and regulations; were paid biweekly; worked in excess of 40 hours in some workweeks; and were subject to Defendant's policies and practices of failing to include differentials in their regular rate of pay for the purpose of determining their overtime rate, resulting in failure to pay the statutorily required overtime pay in weeks in which they worked in excess of 40 hours.

89.     Defendant is and has been aware of the requirement to pay Plaintiffs Campbell, Dejesus and Karki and the Non-Supervisory Collective Plaintiffs at a rate of 1.5 times their hourly rate for all hours worked in excess of 40 per workweek, yet willfully, with lack of good faith, and/or without reasonable grounds for believing it was complying with the FLSA, chose not to.

90.     The Non-Supervisory Collective Plaintiffs are readily discernable and ascertainable. All Non-Supervisory Collective Plaintiffs' contact information is readily available in Defendant's records. Notice of this collective action can be made promptly after the Court determines it appropriate to do so.

91.     The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual Non-Supervisory Collective Plaintiffs creates a risk for either varying results based on identical fact patterns or creation of precedents in cases brought by one or more Collective members that effectively determine how the claims of other Collective members will be decided without the latter having had an opportunity to influence the outcome.

92.     The questions of law and fact are nearly identical for all Non-Supervisory Collective Plaintiffs and therefore proceeding as a collective action is ideal. Without judicial resolution of the claims asserted on behalf of the proposed collective, Defendant's continued violations of the FLSA will undoubtedly continue.

## V.    The CUNY Supervisory Collective

93.     Plaintiffs Campbell, Rodriguez and Larreategui seek to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on their own behalves as well as those in the following Supervisory Collective:

> All CUNY sergeants or corporals employed by Defendant during the past 3 years through the final date of disposition of this action, who **(a)** worked during unpaid meal breaks, and/or on pre- or post-tour work, during weeks in which they worked more than 40 hours (including off-the-clock work time) and were not paid for these hours at the statutorily required rate of 1.5 times their regular rate for all hours worked in excess of 40 per workweek, and/or **(b)** worked in excess of 40 hours in any workweek and were not paid for these hours at the statutorily required rate of 1.5 times their regular rate for all hours worked in excess of 40 in those workweeks because Defendant omitted Night Shift, Arms, and/or Fire Safety differentials from their regular rate of pay.

Members of this Collective are referred to as the CUNY Supervisory Collective Plaintiffs.

94.     At all relevant times, Plaintiffs Rodriguez and Larreategui, and Plaintiff Campbell for the period beginning in August 2021, were similarly situated to all such individuals in the CUNY Supervisory Collective because, while employed by Defendant, Plaintiffs Campbell, Rodriguez, and Larreategui and all CUNY Supervisory Plaintiffs were subject to the same laws and regulations, were paid biweekly, worked in excess of 40 hours in some work weeks, worked during unpaid meal breaks and/or on pre- or post-tour work during those weeks, and were subject to Defendant's policies and practices of failing to pay them at the statutorily required rate of 1.5 times their hourly rate for all hours worked in excess of 40 per workweek.

95.     At all relevant times, Plaintiffs Rodriguez and Larreategui, and Plaintiff Campbell for the period beginning in August 2021,  are also similarly situated to all such individuals in the CUNY Supervisory Collective because, while employed by Defendant, Plaintiffs Campbell, Rodriguez, and Larreategui were paid biweekly; worked in excess of 40 hours in some workweeks; and were subject to Defendant's policies and practices of willfully failing to include differentials in their regular rate of pay for the purpose of determining their overtime rate, resulting in failure to pay the statutorily required overtime pay in weeks in which they worked in excess of 40 hours.

96.     Defendant is and has been aware of the requirement to pay Plaintiffs Campbell, Rodriguez, and Larreategui and the CUNY Supervisory Plaintiffs at a rate of 1.5 times their hourly rate for all hours worked in excess of 40 per workweek, yet willfully, with lack of good faith, and/or without reasonable grounds for believing it was complying with the FLSA, chose not to.

97.     The CUNY Supervisory Collective Plaintiffs are readily discernable and ascertainable. All CUNY Supervisory Collective Plaintiffs' contact information is readily available in Defendant's records. Notice of this collective action can be made promptly after the Court determines it appropriate to do so.

98.     The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual CUNY Supervisory Collective Plaintiffs creates a risk for either varying results based on identical fact patterns or creation of precedents in cases brought by one or more Collective members that effectively determine how the claims of other Collective members will be decided without the latter having had an opportunity to influence the outcome.

99.     The questions of law and fact are nearly identical for all CUNY Supervisory Collective Plaintiffs and therefore proceeding as a collective action is ideal. Without judicial

resolution of the claims asserted on behalf of the proposed collective, Defendant's continued violations of the FLSA will undoubtedly continue.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**The Fair Labor Standards Act, 29 U.S.C. § 207, Made by Plaintiffs Campbell, Dejesus, and Karki on Behalf of Themselves and All CUNY Non-Supervisory Collective Plaintiffs (Failure to Pay Overtime)**

100.    Plaintiffs Campbell, Dejesus, Karki, and the CUNY Non-Supervisory Collective Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

101.    Throughout the period covered by the applicable statute of limitations, Plaintiffs Campbell, Dejesus, Karki, and other CUNY Non-Supervisory Collective Plaintiffs worked in excess of 40 hours in one or more workweeks.

102.    Throughout the period covered by the applicable statute of limitations, Defendant knowingly failed to pay Plaintiffs Campbell, Dejesus, Karki, and the CUNY Non-Supervisory Collective Plaintiffs the statutorily required overtime rate for all hours worked in excess of 40 in a workweek by not including differential pay in their regular rate of pay.

103.    Throughout the duration of the relevant time period, Defendant's conduct was willful, not in good faith, and without reasonable grounds for believing that it was in compliance with the FLSA.

104.    Defendant's conduct violates the FLSA, 29 U.S.C. § 207, provides no basis for Defendant to escape liquidated damages under 29 U.S.C. § 260, and warrants expansion of the limitations period to three years under 29 U.S.C. § 255(a).

**AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF**
**The Fair Labor Standards Act, 29 U.S.C. § 207, Made by Plaintiffs Campbell, Rodriguez,**
**and Larreategui on Behalf of Themselves and All CUNY Supervisory Collective Plaintiffs**
**(Failure to Pay Overtime)**

105.    Plaintiffs Campbell, Rodriguez, and Larreategui and the CUNY Sergeant Collective Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

106.    Throughout the period covered by the applicable statute of limitations, Plaintiffs Campbell, Rodriguez, Larreategui, and other CUNY Supervisory Collective Plaintiffs were required to work and did in fact work in excess of 40 hours in one or more workweeks.

107.    Throughout the period covered by the applicable statute of limitations, Defendant knowingly failed to pay Plaintiffs Campbell, Rodriguez, Larreategui, and the CUNY Supervisory Collective Plaintiffs the statutorily required overtime rate for all hours worked in excess of 40 in a workweek by not paying them for work performed before and after their tours and during unpaid meal breaks.

108.    Throughout the period covered by the applicable statute of limitations, Defendant knowingly failed to pay Plaintiffs Campbell, Rodriguez, Larreategui, and the CUNY Supervisory Collective Plaintiffs the statutorily required overtime rate for all hours worked in excess of 40 in a workweek by not including differential pay in their regular rate of pay.

109.    Throughout the duration of the relevant time period, Defendant's conduct was willful, not in good faith, and without reasonable grounds for believing that it was in compliance with the FLSA.

110.    Defendant's conduct violates the FLSA, 29 U.S.C. § 207, provides no basis for Defendant to escape liquidated damages under 29 U.S.C. § 260, and warrants expansion of the limitations period to three years under 29 U.S.C. § 255(a).

## PRAYER FOR RELIEF

**Wherefore**, Plaintiffs and all Collective Plaintiffs demand the following relief against Defendant as follows:

A.      Certification of this action as a collective action pursuant to 29 U.S.C. § 216(b);

B.      Provision of Court-approved notice of the action to all members of the Collectives. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper compensation;

C.      Designation of Plaintiffs as representatives of the Collectives;

D.      A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*.;

E.      A judgment declaring that the Defendant violated the FLSA willfully, making the limitations period three years instead of two;

F.      A judgment awarding (i) back pay for unpaid wages and unpaid overtime, and (ii) liquidated damages that Plaintiffs and all Collective and Class Plaintiffs have sustained because of Defendant's conduct;

G.      A judgment awarding Plaintiffs and all Collective Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs; and

H.      A judgment granting Plaintiffs and all Collective Plaintiffs other and further relief as this Court finds necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this complaint.

Dated: Garden City, New York
April 4, 2024

Respectfully Submitted,

/s/ Robert J. Valli, Jr.

**Valli Kane & Vagnini LLP**
Robert J. Valli, Jr.
Sara Wyn Kane
Matthew Berman
Brendan Carman
600 Old Country Road, Ste. 519
Garden City, New York 11530
(516) 203-7180 (phone)
(516) 706-0248 (fax)
rvalli@vkv.law
skane@vkv.law
mberman@vkv.law
bcarman@vkv.law

**Mehri & Skalet PLLC**

Cyrus Mehri (*pro hac vice forthcoming*)
Michael D. Lieder (*pro hac vice forthcoming*)
Jane Kim (*pro hac vice forthcoming*)
Mehri & Skalet, PLLC
2000 K. Street, NW, Suite 325
Washington, DC 20006
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
cmehri@findjustice.com
mlieder@findjustice.com
jkim@findjustice.com

*Attorneys for Plaintiffs*